**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PERINATAL MEDICAL GROUP, INC., KRISHNAKUMAR RAJANI, M.D., and STEPHEN ELLIOT, M.D.,<br><br>    Plaintiffs,<br><br>    vs.<br><br>CHILDREN'S HOSPITAL CENTRAL CALIFORNIA,<br><br>    Defendant._____/ | CASE NO. CV F 09-1273 LJO GSA<br><br>**ORDER ON DEFENDANT'S MOTIONS TO DISMISS** (Doc. 8) |

**INTRODUCTION**

Defendant Children's Hospital of Central California ("Hospital") moves to dismiss two antitrust claims asserted by plaintiffs Perinatal Medical Group, Inc., ("Perinatal Medical"), Krishnakumar Rajani, M.D. ("Dr. Rajani"), and Stephen Elliot, M.D. ("Dr. Elliot") (collectively "Plaintiffs"), pursuant to Fed. R. Civ. P. 12(b)(6). Hospital contends that Plaintiffs' 15 U.S.C. §1 ("Section 1") claim must be dismissed, because Hospital and its co-conspirator, Specialty Medical Group ("Specialty Medical"), are a single entity, incapable of conspiring for antitrust purposes. Hospital relies on this reasoning to argue that Plaintiffs' 15 U.S.C. §2 ("Section 2") claim must also be dismissed. This Court finds that Plaintiffs failed to allege necessary facts to state a Section 1 claim; however, Hospital's Section 1 reasoning is inapplicable to Section 2. Accordingly, this Court grants in part and denies in part Hospital's motion to dismiss, and grants Plaintiffs leave to amend.

# BACKGROUND[1]

Hospital is a non-profit corporation that serves pediatric patients from approximately 35 cities in a geographic area of approximately 45,000 square miles. Hospital maintains a Regional Neonatal Intensive Care Unit ("NICU"). Drs. Rajani and Elliot are neonatologists who have practiced neonatology in the Fresno area for 30 and 25 years, respectively. Dr. Rajani is the president of Perinatal Medical, a professional medical corporation that has provided services in and for various Fresno and Madera county hospitals since 1980. Dr. Rajani and Dr. Elliot are both shareholders in Perinatal Medical. Dr. Vinod Bansal, Dr. Chetan Patel, and Dr. Kajori Thusu ("former shareholders") were also Perinatal Medical shareholders.

Specialty Medical is a professional medical corporation of approximately 70 specialty physicians who practice in the area. Hospital is "affiliated" with Specialty Medical. Special Medical's corporate charter mandates that Hospital's Chief Medical Officer shall be Specialty Medical's sole shareholder.

Through February 2009, Perinatal Medical had a contract with Hospital to provide 24/7 coverage and administrative services for the Hospital's NICU. Through this contract, Plaintiffs maintained staff privileges with Hospital. Until February 2009, Dr. Rajani was the Medical Director of Hospital's NICU.

In addition to their privileges at Hospital, Dr. Rajani and Dr. Elliot also enjoyed privileges at Community Medical Center ("Community"). In December 2008, Community, with the assistance of Drs. Rajani and Elliot, opened a new 65 bed NICU. Community's NICU has a "community" designation, which is lower than Hospital's "regional" designation. Critically ill infants with certain medical conditions, therefore, are transferred from Community to Hospital for treatment.

In mid-2008, Hospital approached Perinatal Medical's former shareholders and solicited them to either leave Perinatal Medical to join Specialty Medical, or to form a separate medical group. Hospital promised the former shareholders that in return, Hospital would assist them with the transition of their practices. In late 2009, Hospital told Dr. Rajani that if Perinatal Medical did not agree to practice exclusively through the Hospital, and in particular not at Community, then Hospital would not renew Perinatal Medical's contract with Hospital. Hospital demanded that Perinatal Medical sign an

---

[1] The facts from the complaint are taken as true. *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

amendment to their contract to prohibit the physicians from admitting or treating patients at competing hospitals. In addition, the contract amendment prohibits a physician from referring a patient to any specialist who is not a member of Specialty Medical.

Perinatal Medical refused to sign the contract amendment with Hospital, and the contract expired in February 2009. The former shareholders left Perinatal Medical and formed Central California Natal Group ("CCNG"). CCNG entered into an exclusive contract with Hospital to provide Medical Director and related services at Hospital's NICU. Under the terms of the agreement between CCNG and Hospital, CCNG physicians make all specialty referrals to Specialty Medical physicians and practice exclusively at, and admit all of their patients to, Hospital's NICU.

After Hospital terminated Perinatal Medical's contract, beginning March 2009, Plaintiffs made numerous unsuccessful attempts to admit and care for patients in Hospital's NICU. Each time, notwithstanding that they had privileges at Hospital's NICU, Plaintiffs were told that they could not admit patients unless either they, or another physician, was present physically in the NICU during the entire hospital stay of each patient, 24 hours a day, 7 days a week.

Plaintiffs allege that Hospital and Specialty Medical conspired to restrain and monopolize the provision of Hospital's NICU and specialty physician services. Plaintiffs allege that Hospital and Specialty Medical made an agreement to prohibit neonatologists who will not agree to practice exclusively at and through the Hospital, and who will not agree to make all specialty referrals exclusively to [Specialty Medical] physicians, from practicing neonatalogy in the region." Compl. ¶¶30, 49. Plaintiffs contend that Hospital improperly precluded them from performing services at Hospital, in violation of the Sherman Act.

On July 21, 2009, Plaintiffs initiated this action to allege eight causes of action against Hospital. Specific to the instant motion to dismiss, Plaintiffs allege two antitrust causes of action: (1) Violation of Sherman Antitrust Act §1; and (2) Violation of Sherman Antitrust Act §2. Hospital moved to dismiss the antitrust claims on September 21, 2009. Plaintiffs opposed the motion on October 15, 2009. Hospital replied on October 22, 2009. This Court found this motion suitable for a decision without oral argument, vacated the October 29, 2009 hearing pursuant to Local Rule 78-230(h), and issues the following ruling.

**DISCUSSION**

**I.     Pleading And Fed. R. Civ. P. 12(b)(6) Motion Standards**

A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted). Thus, "bare assertions...amounting to nothing more than a 'formulaic recitation of the elements'...are not entitled to an assumption of truth." *Iqbal*, 129 S. Ct. at 1951 (quoted in *Moss v. United States Secret Serv.*, 2009 U.S. App. LEXIS 15694, *14 (9th Cir. 2009)). A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

To state an antitrust claim, "the need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'show that the pleader is entitled to relief.'" *Id.* at 1966. In *Twombly*, 127 S. Ct. 1955, 1966-67, the Court further ruled

> [I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive. As we indicated over 20 years ago...a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed (internal citations and quotations omitted).

With these standards in mind, this Court turns to the defendants challenges to Plaintiffs' antitrust claims.

## II. Section 1 of the Sherman Act

Hospital argues that because Hospital and Specialty Medical are not separate entities, Plaintiffs fail to state a claim for a conspiracy of Section 1 of the Sherman Act. Section 1 of the Sherman Act prohibits "[e]very contract, combination...or conspiracy in restraint of trade or commerce among the several States." 15 U.S.C. §1. "Section 1, like the tango, requires multiplicity: A company cannot conspire with itself." *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2005) (citing *Copperweld Co. v. Independence Tube Co.*, 467 U.S. 752, 769 (1984)). "If two erstwhile competitors combine to become a single economic entity–by merger or acquisition, for example–the act of combination may violate the antitrust laws, but their subsequent relations are generally immune from section 1." *Id.*[2]

Hospital maintains that because of the affiliation between Hospital and Speciality Medical, they

---

[2] Their subsequent actions may *not* be immune from 15 U.S.C. §2, as discussed more fully below.

5

1  are not "separate economic actors pursuing separate economic interests." *Copperweld*, 467 U.S. at 768.
2  In *Copperweld*, the Supreme Court ruled that a parent corporation and its wholly owned subsidiary, or
3  a corporation and its unincorporated division, cannot "conspire" for Section 1 purposes. *Id*. The Court
4  reasoned that to do so would "treat[] as the concerted activity of two entities what is really unilateral
5  behavior flowing from decisions of a single entity." *Id*. at 766-67.  "Because coordination between a
6  corporation and its division does not represent a sudden joining of two independent sources of economic
7  power previously pursuing separate interests, it is not activity that warrants §1 scrutiny." *Id*. at 771. As
8  to a parent corporation and its wholly owned subsidiary, "[t]heir objectives are common, not disparate;
9  their general corporate actions are guided or determined not by two separate corporate consciousnesses,
10 but one....If a parent and a wholly owned subsidiary do 'agree' to a course of action, there is no sudden
11 joining of economic resources that had previously served different interests, and there is no justification
12 for §1 scrutiny." *Id*.

13    Hospital argues that Plaintiffs allege a relationship been Hospital and Specialty Medical that is
14 similar to a parent corporation and its subsidiary.  Plaintiffs allege that Specialty Medical's corporate
15 charter mandates that Hospital's Chief Medical Officer shall be Specialty Medical's sole shareholder.
16 Comp. ¶15. The sole owner of Specialty Medical is at all times an officer and employee of Hospital, and
17 at all times, this individual reports directly to the Chief Executive Officer of the Hospital. *Id.*
18 Defendants contend that these allegations clearly establish that Hospital and Specialty Medical have a
19 complete unity of interest.  Defendants assert that Hospital's and Specialty Medical's objectives are
20 common, and their actions are guided or determined by one corporate consciousness.

21    Plaintiffs argue that the *Copperweld* ruling is inapposite, because it is limited to a parent
22 corporation and its wholly owned subsidiary. Plaintiffs assert that the relationship between Hospital and
23 Specialty Medical is like the relationship described in *Oltz v. St. Peter's Community Hospital*, 861 F.2d
24 1440 (9th Cir. 1998).  In *Oltz*, the Ninth Circuit adopted the reasoning of *Bolt v. Halifax Hosp. Medical*
25 *Center*, 851 F.2d 1273 (11 Cir. 1988) (hospital and each member of the medical staff are legally separate
26 entities) to rule that a hospital and its anesthesiologists were not a single entity.  In applying this
27 reasoning, the *Oltz* court ruled:
28 ///

> Although the M.D. anesthesiologists may have been the agents of St. Peter's for some purposes, their interests were not as wed as the ties between a corporation and its officers or employees. St. Peter's did not pay the anesthesiologists a salary; they billed the patients they served directly. The anesthesiologists were independent contractors pursuing their personal economic interests when they pressured St. Peter's to eliminate Oltz as a direct competitor. Those interests were sufficiently independent so that the collaborated conduct between the anesthesiologists and St. Peter's coalesced economic power previously directed at disparate goals.

*Oltz*, 861 F.2d at 1450.

The single-entity rule set forth in *Copperweld* extends beyond the parent-subsidiary relationship:

> It applies to a company and its officers, employees and wholly owned subsidiaries. [*Copperweld*] at 769, 771. It also applies to subsidiaries controlled by a common parent, *Thomsen v. W. Elec. Co.*, 680 F.2d 1263, 1265-66 (9th Cir. 1982), firms owned by the same person, *Las Vegas Sun, Inc. v. Summa Corp.*, 610 F.2d 614, 616, 618 (9th Cir. 1979), and a firm owned by a subset of the owners of another, *Copperweld,* 467 U.S. at 773 n.21 (citing *Sunkist Growers, Inc. v. Winckler & Smith Citrus Prods. Co.*, 370 U.S. 19, 29, 8 L. Ed. 2d 305, 82 S. Ct. 1130 (1962)). It applies to principal-agent relationships, *Calculators Haw., Inc. v. Brandt, Inc.*, 724 F.2d 1332, 1336 (9th Cir. 1983), and to "partnerships or other joint arrangements in which persons who would other-wise be competitors pool their capital and share the risks of loss as well as the opportunities for profit." *Maricopa County Med. Soc'y*, 457 U.S. at 356; *see also Hahn v. Or. Physicians' Serv.*, 868 F.2d 1022, 1029 n.5 (9th Cir. 1988). The theme in these cases is economic unity. Where there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity.

*Freeman*, 322 F.3d at 1147-48. Apart from economic unity, courts consider whether the entities compete to determine application of Section 1. For example, in *Williams v. I.B. Fischer Nevada*, 999 F.2d 445 (9th Cir. 1993), the Ninth Circuit determined that a franchisor and its franchisees are a single entity for Section 1 purposes, because the inherent nature of the relationship between franchisor and its franchisees is a "non-competitive environment." On the other hand, in *Los Angeles Memorial Coliseum*, 726 F.2d 1381 (9th Cir. 1984), the Ninth Circuit held that the teams of the NFL are not a single entity, because the "member clubs are all independently owned...the profits and losses are not shared...and the NFL clubs do compete with one another off the field as well as on to acquire players, coaches, and management personnel." *Id*. at 1389-90.

Based on these cases, the "crucial question" to determine whether Hospital and Specialty Medical are a single entitle is "whether the entities alleged to have conspired maintain an 'economic unity,' and whether the entities were either actual or potential competitors." *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1034 (9th Cir. 2005).

Here, as in *Jack Russell Terrier Network*, Plaintiffs' complaint insufficiently pleads a Section 1 claim. Assuming all of Plaintiffs' alleged facts to be true, "they have not alleged sufficient facts to support a claim that the [Hospital] and [Specialty Medical] are separate entities pursuing different economic goals, capable of conspiring for Sherman Act purposes." 407 F.3d at 1034. As Hospital points out, Plaintiffs failed to allege in what manner Hospital and Specialty Medical had divergent economic interests, or what goals Specialty Medical pursued other than those of the Hospital. Although this Court assumes "the truth of the facts alleged in the complaint, [it] cannot assume any facts necessary to the [Plaintiffs']claim that they have not alleged." *Associated Gen. Contractors, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983). As such, Plaintiffs failed to satisfy the pleading requirements, particularly applied to an antitrust complaint, as set forth in *Twombly* and *Iqbal*. Accordingly, Plaintiffs failed to state a Section 1 claim.

**III.     Section 2 of the Sherman Act**

Unlike Section 1, Section 2 of the Sherman Act prohibits antitrust activity of a single entity. Section 2 makes it an offense for any person to "monopolize, or attempt to monopolize, or combine or conspire with any other persons, to monopolize any part of the trade or commerce among the several states." The offense of monopoly has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966).

Hospital claims that Plaintiffs' Section 2 cause of action fails because Plaintiffs allege only a conspiracy to monopolize. Hospital relies on its single entity arguments, but cites no authority related to Section 2. As set forth above, the Sherman Act contains a "basic distinction between concerted and independent action." *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 761 (1984). The conduct of a single firm is governed by Section 2 alone. Nevertheless, Section 2 prohibits a single entity from combining or conspiring with other entities. "By making a conspiracy to monopolize unlawful, §2 does reach both concerted and unilateral behavior." *Copperweld*, 467 U.S. at 768 n. 13. Accordingly, Hospital's unsupported assertion is incorrect. Plaintiffs' Section 2 cause of action does not fail on these grounds.

**IV.     State Law Claims**

Hospital argued that because Plaintiffs failed to state a cause of action for both Section 1 and Section 2, this Court should dismiss Plaintiffs' state law claims for lack of subject matter jurisdiction. As set forth above, however, Plaintiffs state a Section 2 claim. Accordingly, this Court has subject matter jurisdiction over this action, based on 15 U.S.C. §2 and 28 U.S.C. §1331. Hospital's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

## CONCLUSION AND ORDER

For the foregoing reasons, this Court:

1. GRANTS in part and DENIES in part Hospital's Fed. R. Civ. P. 12(b)(6) motion to dismiss;
2. DISMISSES Plaintiffs' first cause of action;
3. DENIES Hospital's Fed. R. Civ. P. 12(b)(1) motion; and
4. GRANTS Plaintiffs leave to amend. Plaintiffs shall file an amended complaint no later than **November 25, 2009.**

IT IS SO ORDERED.

**Dated:   November 5, 2009**                /s/ Lawrence J. O'Neill
                                                                  UNITED STATES DISTRICT JUDGE